The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 21, 2019

## 2019COA23

**No. 16CA0737, *People v. Denhartog* — Crimes — Assault in the
First Degree — Peace Officers, Firefighters, or Emergency
Medical Services Providers**

During a traffic stop, the defendant suddenly and without
warning backed his car into a police officer's motorcycle, injuring
the officer. He was convicted of first degree assault of a peace
officer, which requires proof that the defendant "threatened" the
peace officer with a deadly weapon. On appeal, he argued the
evidence was insufficient to support his conviction because the
prosecution failed to prove he "threatened" the officer.

A division of the court of appeals agrees, concluding that,
consistent with prior case law construing the term, "threaten"
means to express a purpose or intent to cause harm or injury and
the act of suddenly hitting the officer's motorcycle, without more,

does not constitute a threat.  Accordingly, the division vacates the defendant's conviction for first degree assault.

The division rejects the defendant's remaining challenges to his convictions and sentences, with the exception of his claim, conceded by the People, that his multiple convictions for second degree assault must merge.

COLORADO COURT OF APPEALS                                      **2019COA23**

---

Court of Appeals No. 16CA0737
El Paso County District Court No. 15CR1196
Honorable David S. Prince, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert Leonard Denhartog,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Hawthorne and Fox, JJ., concur

Announced February 21, 2019

---

Philip J. Weiser, Attorney General, Jillian J. Price, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Jon W. Grevillius, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Robert Leonard Denhartog, was convicted of various felony, misdemeanor, and traffic offenses after he suddenly reversed his vehicle during a traffic stop, striking a patrol officer's motorcycle, then fled the scene and broke into an unoccupied apartment.

¶ 2     On appeal, he contends that the evidence was insufficient to support his conviction for first degree assault of a peace officer and that the court erred by admitting prior bad act evidence and by allowing prosecutorial misconduct in closing argument.  He also argues that various convictions must merge and that certain sentences must run concurrently.

¶ 3     We agree that the evidence did not establish that Denhartog threatened the patrol officer with a deadly weapon and we therefore vacate his conviction and sentence for first degree assault.  We also agree, as do the People, that the second degree assault convictions must be merged.  But we otherwise reject Denhartog's challenges to his convictions and sentences.

¶ 4     Accordingly, we affirm the judgment in part, vacate it in part, and remand for resentencing.

## I.     Background

¶ 5     A motorcycle officer on patrol in Colorado Springs observed Denhartog speeding and pulled him over.  The officer parked about twelve feet behind Denhartog's Jeep.

¶ 6     According to the officer's testimony at trial, as he looked down to adjust his kickstand and prepared to dismount from his bike, Denhartog suddenly reversed the Jeep and drove "extremely fast" into the motorcycle, pushing the bike backwards and rendering it inoperable.  The officer did not see the Jeep coming toward him; he realized that the Jeep was reversing only "as it hit [him]."  The impact caused the officer to fall and, as a result, he sustained minor injuries.

¶ 7     Denhartog left the scene and drove to a nearby apartment complex where he broke into an unoccupied apartment.  The prosecution presented evidence that, once inside, Denhartog caused damage to the apartment and the tenant's belongings and set fire to contraband he was carrying.  After several hours, police entered the apartment and arrested him.

¶ 8     Denhartog was charged with fifteen felony, misdemeanor, and traffic offenses.  As relevant here, the jury convicted him of first

degree assault of a peace officer, two counts of second degree assault, vehicular eluding, first degree criminal trespass, and second degree burglary.

## II. Sufficiency of the Evidence of First Degree Assault

¶ 9    A person commits the crime of first degree assault of a peace officer when, with the intent to cause serious bodily injury, he "threatens [the officer] with a deadly weapon" while the officer is engaged in the performance of his or her duties, and the person knows or reasonably should know that the victim is a peace officer. § 18-3-202(1)(e), C.R.S. 2018.

¶ 10    Denhartog does not dispute that a car can be used as a deadly weapon, *see People v. Stewart*, 55 P.3d 107, 117 (Colo. 2002), or that, when viewed in the light most favorable to the prosecution, the evidence is sufficient to support a conviction for *second degree* assault, *see* § 18-3-203(1)(b), C.R.S. 2018 (a person commits second degree assault when, with intent to cause bodily injury, he causes such injury to another person by means of a deadly weapon).  But, he says, the evidence is insufficient to prove *first degree* assault of a peace officer because there was no evidence that he used the Jeep to "threaten" the officer.  We agree.

3

## A.     Standard of Review

¶ 11     We review sufficiency of the evidence claims de novo.  *People v. Perez*, 2016 CO 12, ¶ 8.  We must determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable jury that the defendant is guilty beyond a reasonable doubt.  *People v. Campos*, 2015 COA 47, ¶ 9.

¶ 12     Denhartog's sufficiency of the evidence claim turns on the meaning of a provision of the first degree assault statute.  The meaning of a statute is a question of law that we review de novo.  *Id.* at ¶ 10.

¶ 13     The People say that because Denhartog's motion for judgment of acquittal was too general and he failed to renew it at the close of the evidence, he did not preserve his sufficiency of the evidence claim, and we must review that claim for plain error.

¶ 14     Divisions of this court are split on whether to review an unpreserved sufficiency of the evidence claim for plain error.  *Compare People v. McCoy*, 2015 COA 76M, ¶¶ 21, 36 (declining to review for plain error), *with People v. Lacallo*, 2014 COA 78, ¶¶ 6, 20 (applying plain error standard of review to the defendant's

unpreserved claim). We are persuaded by the majority's reasoning in *McCoy*, ¶¶ 6-36, and the reasoning of the special concurrences in *Lacallo*, ¶¶ 59-73 (Roman, J., concurring in part and dissenting in part), and *People v. Heywood*, 2014 COA 99, ¶¶ 44-52 (Gabriel, J., specially concurring), so we apply that reasoning here and reject the People's proposed standard of review.

## B. "Threatening" a Peace Officer Requires Proof That Defendant Expressed a Purpose or Intent to Cause Harm

¶ 15 The first degree assault of a peace officer statute criminalizes the use of a deadly weapon to *threaten* a peace officer. § 18-3-202(1)(e). Denhartog argues that to "threaten" requires some communication of an intent to take hostile action, and the evidence showed only that he suddenly, and without warning, backed his Jeep into the officer's motorcycle. The People, on the other hand, argue that to "threaten" includes not just communication of an intent to take action but also the commission of any act that places an officer at risk of harm. So, they contend, Denhartog "threatened" the officer by hitting him with the Jeep.

¶ 16    True, as the parties note, the first degree assault statute does not define the term "threaten" or "threat."  But we are hardly writing on a blank slate.

¶ 17    In interpreting various statutes in the criminal code, the supreme court and divisions of this court have consistently defined "threat" to mean "a statement" or "declaration" of "purpose or intent to cause injury or harm to the person, property, or rights of another, by the commission of an unlawful act."  *People v. Hickman*, 988 P.2d 628, 636 (Colo. 1999) (quoting *People v. Hines*, 780 P.2d 556, 559 (Colo. 1989), and *Schott v. People*, 174 Colo. 15, 18, 482 P.2d 101, 102 (1971) (defining "threat" as used in the retaliation against a witness statute)); *see also People v. Chase*, 2013 COA 27, ¶ 69 (defining "threat" in the context of the stalking statute).

¶ 18    Nearly thirty years ago, in *Hines*, the supreme court defined "threat" in the context of the felony menacing statute.  780 P.2d at 558-59.  We find *Hines* particularly instructive because the felony menacing statute proscribes, in part, the same conduct proscribed by the first degree assault of a peace officer statute — using a deadly weapon to threaten another person.  *See* § 18-3-206(1)(a), C.R.S. 2018 (a person commits felony menacing if, by any threat or

6

physical action, and with the use of a deadly weapon, he knowingly places or attempts to place another person in fear of imminent serious bodily injury).  And in *Hines*, the supreme court held that the act of threatening another person requires "a statement of purpose or intent to cause injury or harm . . . ."  780 P.2d at 559.

¶ 19     We discern no basis to apply a different definition of "threaten" to the same conduct described in the first degree assault statute, and the People do not suggest one.  To the contrary, *Hickman* makes clear that we should apply the definition of threat provided by the felony menacing case law to other provisions of the criminal code, as the supreme court did in that case.  988 P.2d at 636; *see also* § 2-4-101, C.R.S. 2018 (In interpreting a statute, "[w]ords or phrases that have acquired a . . . particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

¶ 20     Even if prior case law did not settle the question, we would reject the People's proposed definition of "threat," which includes any action that puts a peace officer at risk of harm, because it is irreconcilable with the plain language of the statute.  As a matter of basic statutory interpretation, we construe statutes as written, without adding words or phrases, *People v. Diaz*, 2015 CO 28, ¶ 12,

as we presume the legislature "meant what it clearly said," *State v. Nieto*, 993 P.2d 493, 500 (Colo. 2000). In our view, if the legislature had intended section 18-3-202(1)(e) to prohibit any conduct that places a peace officer at risk of harm, it would have said so. *See Diaz*, ¶ 18. It surely knew how to convey that concept — section 18-3-202(1)(c), the preceding statutory provision, makes it unlawful for a person to engage in conduct "which creates a grave risk of death to another person" and results in serious bodily injury. We must assume that, by using different language in subsection (1)(e), the legislature intended to proscribe different conduct. *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1009 (Colo. 2008) ("[T]he use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings."); *see also People v. Delgado-Elizarras*, 131 P.3d 1110, 1113 (Colo. App. 2005) (distinguishing between the crime of reckless endangerment — which requires proof that the defendant engaged in conduct that created a substantial risk of serious bodily injury — and the crime of first degree assault of a peace officer — which requires proof that the defendant threatened a peace officer with a deadly weapon and intended serious bodily injury).

¶ 21    We find unpersuasive the People's argument that only by reading the statutory provision to reach any act that puts an officer at risk of harm can we implement the legislature's intent to criminalize "all manner of threats" made against police officers.  By its terms, section 18-3-202(1)(e) criminalizes all threats involving a deadly weapon made against a police officer.

¶ 22    Likewise, we do not share the People's concern that adopting a definition of "threat" endorsed by the supreme court since 1971, *see Schott*, 174 Colo. at 18, 482 P.2d at 102, will lead to absurd results. According to the People, requiring proof of an expression of intent to do harm would allow a defendant to escape liability under section 18-3-202(1)(e) so long as the officer did not perceive the threat.  But the sufficiency of proof of "threatening" conduct has never turned on "what the victim saw or heard during the course of [the criminal] incident."  *People v. Shawn*, 107 P.3d 1033, 1035 (Colo. App. 2004) (quoting *People v. Saltray*, 969 P.2d 729, 732 (Colo. App. 1998)) (interpreting the definition of "threat" in the felony menacing statute).  Instead, the "proper focus is on the intent and conduct of the actor."  *Id.*

¶ 23 Finally, we note that the People have not cited any case in any jurisdiction — and we have not found one — that defines "threat" to mean any act that places a person at risk of harm.

¶ 24 Accordingly, we conclude that to obtain a conviction for first degree assault of a peace officer, the prosecution had to prove that, by use of a deadly weapon, Denhartog expressed a purpose or intent to cause injury or harm to the officer or the officer's property.

## C. The Evidence Does Not Show That Denhartog Threatened the Officer

¶ 25 The People contend that the evidence is sufficient to support a conviction for first degree assault because the record shows that "Denhartog put his Jeep in reverse and hit [the officer's] motorcycle," which put the officer at risk of serious harm. The People acknowledge, though, that Denhartog reversed the Jeep without warning and that the officer did not see the Jeep coming toward him before the impact. Thus, other than the act of hitting the officer on his motorcycle, the People do not point to any conduct by Denhartog that might constitute "threatening" the officer.

¶ 26 To the extent the People rely on the officer's testimony that the Jeep represented a "threat" to his safety, we disagree that the

10

testimony renders the evidence sufficient. For one thing, as we have explained, the fact that the collision put the officer at risk is not enough. And, as we have also explained, the victim's perception of the threat is not dispositive.

¶ 27 Thus, we conclude that the act of reversing into the officer, on its own, is not sufficient to prove that Denhartog threatened a peace officer.

¶ 28 We do not mean to suggest that there are no circumstances under which a person could use a vehicle as a deadly weapon to threaten a peace officer within the meaning of section 18-3-202(1)(e). Nor is it necessary for us to make any pronouncements about what kind of expressive conduct constitutes a statement or declaration of intent to harm another person. In other words, we do not foreclose an interpretation of "threaten" that includes nonverbal communication of an intent to harm. We determine only that, in this case, there was no expression of any kind of an intent to harm the officer, but merely conduct that caused harm.

¶ 29 Accordingly, we determine that the evidence was insufficient to sustain a conviction for first degree assault of a peace officer. We therefore vacate the conviction and sentence and remand for the

court to enter a judgment of acquittal on the charge of first degree assault. *See People v. Cardenas*, 2014 COA 35, ¶ 21 (noting that judgment of acquittal must be entered when the evidence is insufficient to support the jury's guilty verdict).

### III.   Admission of CRE 404(b) Evidence

¶ 30    Next, Denhartog contends that the court erred in admitting evidence under CRE 404(b) of his prior assault of a peace officer. We disagree.

### A.   The Prior Bad Act Evidence

¶ 31    The primary dispute at trial was whether Denhartog intended to hit the officer with his Jeep or whether he intended only to hit the motorcycle and disable it.

¶ 32    In accordance with Rule 404(b), the prosecution filed a pretrial notice of intent to introduce evidence that, fifteen years earlier, Denhartog had assaulted a police officer under similar circumstances. According to the officer involved in the prior incident, police attempted to stop Denhartog for a traffic offense. He initially eluded police, but eventually stopped when he reached the dead end of a parking lot. When the officer pulled his patrol car behind Denhartog's car, Denhartog suddenly reversed into the

officer's car and then tried to flee the scene. The officer tackled him to the ground and a physical altercation ensued, during which Denhartog tried to disarm the officer. Two civilians passing by helped the officer subdue Denhartog so that he could be arrested. He later pleaded guilty to second degree assault of a peace officer.

¶ 33    Over Denhartog's objection, the district court admitted the evidence to show intent and absence of mistake or accident.

## B.    Standard of Review

¶ 34    Trial courts are afforded substantial discretion in deciding whether to admit evidence of other acts. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009). We review the trial court's decision for an abuse of discretion and will disturb its ruling only if it was manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 35    Because Denhartog preserved his claim, we review it under a harmless error standard. Under this standard, even if we discern an error, reversal is not required unless the error substantially influenced the verdict or affected the fundamental fairness of the trial. *People v. Conyac*, 2014 COA 8M, ¶ 94.

## C.    The District Court Did Not Abuse Its Discretion in Admitting the Prior Act Evidence

¶ 36    Evidence is not admissible to prove the character of a person in order to show that he acted in conformity with that character on a particular occasion.  CRE 404(b).  However, evidence of other crimes, wrongs, or acts is admissible if used for purposes independent of an inference of bad character.  *Id.*

¶ 37    In *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990), the supreme court set forth a four-part test to determine the admissibility of such evidence: (1) the evidence must relate to a material fact; (2) the evidence must be logically relevant; (3) the logical relevance of the evidence must be independent of the prohibited inference that the defendant has a bad character; and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.

¶ 38    Denhartog argues that evidence of his prior assault of a police officer was not logically relevant to prove his intent to assault the officer in this case.  According to Denhartog, the jury should have determined his intent based on whether the officer was on the motorcycle at the time of the collision.  And, he says, evidence that he previously rammed into a different officer's patrol vehicle did not

make it more or less likely that the officer was on his motorcycle when he was hit.

¶ 39    But at trial, Denhartog argued that *whether or not* the officer was on his motorcycle at the time of impact, he did not intend to hit him but only to disable the motorcycle. If he did hit the officer, Denhartog told the jury, it "was an accident."

¶ 40    Thus, the evidence was relevant to establish Denhartog's intent to commit an assault. *See Yusem,* 210 P.3d at 464 (prior act evidence is admissible to prove elements of the charged offense). To the extent Denhartog claimed that any contact with the officer was purely accidental, the evidence was relevant to show that he had previously intentionally injured a police officer under similar circumstances. *See People v. Rowe,* 2012 COA 90, ¶¶ 42-43 (prior act evidence is logically relevant when it rebuts defense of mistake).

¶ 41    For two reasons, we reject Denhartog's argument that the prior conduct was too dissimilar from the instant offense to be probative of anything other than his propensity to assault police officers.

¶ 42    First, the requirement that the evidence have relevance independent of an inference of conformity with bad character does

15

not "demand the absence of the inference" entirely, but simply means that the evidence cannot be relevant *only* to show a propensity to commit crimes. *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994).

¶ 43 Second, the degree of similarity necessary to give the evidence sufficient probative force for admission varies considerably depending on the purpose for which it is offered. *People v. Rath*, 44 P.3d 1033, 1042 (Colo. 2002). For example, admission of evidence of design or method, offered to prove the identity of the defendant as the perpetrator, depends much more heavily on the similarity of the crimes "than evidence offered merely to prove that the defendant acted intentionally." *Id.*

¶ 44 Here, in both the prior incident and the instant case, when Denhartog was pulled over for a traffic offense, he rammed his vehicle into the police vehicle in an attempt to flee the scene and avoid arrest. In the prior incident, when he could not flee in his car, Denhartog engaged in a physical fight with the officer in an effort to escape and intentionally caused the officer bodily injury.

¶ 45 We conclude that the incidents were similar enough that the prior act evidence was admissible for the nonpropensity purpose of

16

rebutting Denhartog's defense that his conduct was accidental rather than intentional. *See People v. Harris*, 2016 COA 159, ¶ 87 (prior act evidence was relevant for nonpropensity purpose of negating the defendant's theory that animals were malnourished due to mistake or accident).

¶ 46 Finally, we conclude that the district court did not abuse its discretion in balancing the CRE 403 factors of probative value and prejudice. Because the balancing test favors admission of evidence, a reviewing court must afford the evidence the maximum probative value attributable by a reasonable jury and the minimum unfair prejudice to be expected. *Rath*, 44 P.3d at 1043.

¶ 47 The central dispute here was whether Denhartog intended to injure the officer when he reversed his Jeep into the officer's motorcycle. Thus, the prior act evidence, which was directly relevant to the dispute, was highly probative. *See People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009). And while prior act evidence always carries a risk of unfair prejudice, it was within the district court's discretion to find this risk did not substantially outweigh the probative value of the evidence. *Id.*

¶ 48   In assessing whether the trial court's admission of the prior act evidence was an abuse of discretion, we ask not whether we would have reached a different result but, rather, whether the district court's decision fell within a range of reasonable options. *See People v. Ramos*, 2012 COA 191, ¶ 59, *aff'd*, 2017 CO 6.  On this record, we cannot say that the district court's decision to admit the evidence exceeded the bounds of rationally available choices and was therefore manifestly arbitrary, unreasonable, or unfair.

## IV.   Prosecutorial Misconduct

¶ 49   Denhartog contends that prosecutorial misconduct during closing argument requires reversal of his assault and eluding convictions.

### A.   Preservation and Standard of Review

¶ 50   In reviewing a claim of prosecutorial misconduct, we use a two-step analysis: first, we determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  If the defendant objected at trial, we review for harmless error.  *Id.* at 1097.  Otherwise, we review for

plain error. *Id.* Prosecutorial misconduct constitutes plain error only when there is a substantial likelihood that it affected the verdict or that it deprived the defendant of a fair and impartial trial. *People v. Strock,* 252 P.3d 1148, 1153 (Colo. App. 2010).

B. Alleged Prosecutorial Misconduct Does Not Warrant Reversal

¶ 51    First, Denhartog contends that the prosecutor "denigrated" the defense by characterizing defense counsel's arguments as a "gigantic pot" in which he "threw in" "conspiracy theories" to "immobilize" jurors.

¶ 52    A prosecutor may not "state or imply that defense counsel has presented the defendant's case in bad faith or otherwise make remarks for the purpose of denigrating the defense." *People v. Collins,* 250 P.3d 668, 678 (Colo. App. 2010).

¶ 53    But here, the prosecutor's comments "did nothing more than suggest to the jury that the defendant's theory as to why the jury should find a reasonable doubt was so unlikely as to strain credibility." *Id.* (no error in prosecutor calling the defense's theory "absurd").

¶ 54    In his closing argument, defense counsel argued that the motorcycle officer "added in . . . [and] changed details to his story."

19

Counsel implied that the police officers had lied about Denhartog using a broken beer bottle to fend them off before his arrest. And defense counsel also argued that police officers, rather than Denhartog, might have caused damage to the apartment and its belongings.

¶ 55    When viewed in context, then, the prosecutor's comments were a direct response to defense counsel's argument that the officers had conspired to lie and tamper with evidence. *See People v. Douglas*, 2012 COA 57, ¶¶ 68, 70 (prosecutor's comments that directly responded to defense counsel's arguments were not prejudicial misconduct); *see also People v. Liggett*, 114 P.3d 85, 89 (Colo. App. 2005) (prosecutor may comment on the strength of the defendant's theory of the case), *aff'd*, 135 P.3d 725 (Colo. 2006). Accordingly, we discern no error.

¶ 56    Second, Denhartog says that the prosecutor "unfairly exploited" the district court's ruling excluding his hearsay statements to first responders that he did not intend to run over the officer.

¶ 57    During closing argument, the prosecutor asked the jury:

What did we hear significant evidence of
during this trial?  This was not a love tap.
This was not, I want to disable this motorcycle.
I want to knock over this motorcycle so I can
get away.

¶ 58    True, as Denhartog notes, a prosecutor may not refer to facts

not in evidence, *see People v. Walters*, 148 P.3d 331, 334 (Colo.

App. 2006), which, we assume, would include facts excluded from

evidence.  But the prosecutor did not ask the jury to speculate

about facts not in evidence; instead, he argued that the facts in

evidence showed Denhartog's intent to hit the officer with his Jeep.

As the prosecutor stated immediately after the disputed statement,

"This is not a tap.  This is a significant impact.  There was a

significant amount of force."

¶ 59    Thus, the prosecutor properly argued that the facts in

evidence established Denhartog's intent to commit the crimes

charged.  *See Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo.

2005) ("Final argument may properly include the facts in evidence

and any reasonable inferences drawn therefrom.").  We therefore

perceive no error.

¶ 60    Third, Denhartog argues that the prosecutor improperly

appealed to the jurors' sympathies by asking them to imagine a "19-

year-old girl" on the motorcycle, rather than the police officer, at the time of the collision.

¶ 61     While a prosecutor may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance, he may not thereby induce the jury to determine guilt on the basis of passion or prejudice, attempt to inject irrelevant issues into the case, or accomplish some other improper purpose. *People v. Allee*, 77 P.3d 831, 837 (Colo. App. 2003). And even accepting that "arguments delivered in the heat of trial are not always perfectly scripted," *McBride*, 228 P.3d at 221, and may be inartful or ambiguous, *see id.*, we discern no proper purpose for the prosecutor's comments and instead construe them as an appeal to the "emotionalism" of the jurors, *People v. Eckert*, 919 P.2d 962, 967 (Colo. App. 1996).

¶ 62     But because defense counsel failed to object, we will not reverse unless the misconduct amounts to plain error. To constitute plain error, the misconduct must be flagrant or glaring or tremendously improper, and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Rhea*, 2014 COA 60, ¶ 43.

¶ 63    We cannot conclude that the brief comments satisfied the high

standard for reversal.  The focus of this portion of the prosecutor's

argument was Denhartog's conduct, and the weakness of his theory

of defense, not the attributes of the imaginary victim.  Moreover, the

court instructed the jurors that they must not be influenced by

sympathy, bias, or prejudice in rendering their decision.  We

presume that the jurors followed the court's instructions, absent

evidence to the contrary.  *People v. Garcia*, 2012 COA 79, ¶ 20.

Thus, we perceive no plain error.

¶ 64    Fourth, Denhartog contends that the prosecutor misstated the

evidence in recounting a witness's testimony.

¶ 65    At trial, the witness testified that the officer was "straddling"

the motorcycle as the Jeep reversed, but "[b]y the time the Jeep hit

it, [the officer] was off the bike."  During closing argument, however,

the prosecutor claimed that the witness had "squarely put[] [the

officer] on that bike" at the time of the collision.  Defense counsel

did not object to the comments.

¶ 66    A prosecutor may not misstate the evidence in closing

argument.  *People v. Nardine*, 2016 COA 85, ¶ 35.  Still, within the

context of the entire closing argument, the prosecutor's single

23

inaccurate characterization of the witness's somewhat ambiguous testimony was a small part of the summation. It certainly did not "predominate over those parts of the argument that appropriately address[ed] the evidence and the prosecution theory of the case." *Eckert*, 919 P.2d at 967. The prosecutor's single misstatement does not cause us to question the reliability of the judgment of conviction and we therefore discern no plain error.

¶ 67 Finally, we are not persuaded that, cumulatively, the two instances of prosecutorial misconduct warrant reversal of Denhartog's assault and eluding convictions.

¶ 68 As an initial matter, the instances of misconduct related only to Denhartog's intent to commit assault; thus, we would not, under any circumstances, reverse the eluding conviction. But more to the point, neither instance of misconduct was egregious. And even considered together, the brief improper comments do not undermine the reliability of the verdict, particularly in light of the extensive evidence of Denhartog's intent to injure the officer. *See People v. Manyik*, 2016 COA 42, ¶ 41 (no substantial likelihood that prosecutorial misconduct affected the verdict when evidence of the defendant's guilt was strong). Regardless of whether the officer was

on the motorcycle or in the process of dismounting at the precise moment that Denhartog rammed into the bike, a reasonable jury could certainly have inferred from his conduct that he intended to injure the officer.

## V. Post-Trial Errors

¶ 69 Denhartog identifies three alleged errors committed at the sentencing stage of the proceedings. First, he says that the court was required to run his sentence for first degree assault and his sentence for second degree assault concurrently. Next, he says his two convictions for second degree assault merge and one conviction must be vacated. And finally, he argues that, because first degree criminal trespass is a lesser included offense of second degree burglary, his trespass conviction must merge into the burglary conviction.

## A. First Degree Assault Sentence

¶ 70 We have determined that the evidence was insufficient to support Denhartog's conviction for first degree assault, and we have directed the district court, on remand, to enter a judgment of acquittal on this count. Accordingly, Denhartog's challenge to the

sentence is moot, and we will not review it. *Trinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095, 1102 (Colo. 1998).

> B.  Multiplicity of Second Degree Assault Convictions

¶ 71 Denhartog contends, the People concede, and we agree that his two convictions for second degree assault must merge for multiplicity.

¶ 72 Denhartog was convicted of two counts of second degree assault under section 18-3-203: one for causing bodily injury with a deadly weapon (subsection (1)(b)) and one for causing bodily injury to prevent a peace officer from performing a lawful duty (subsection (1)(c)). And the parties agree that both convictions were based on Denhartog's sudden reversal of the Jeep into the motorcycle officer.

¶ 73 Whether convictions for different offenses merge is a question of law that we review de novo. *Page v. People*, 2017 CO 88, ¶ 6.

¶ 74 Multiplicity may arise "where a defendant is charged with and convicted of multiple counts under a single criminal statute, and the statute does not create more than one offense but, rather, provides for alternative ways of committing the same offense." *People v. Barry*, 2015 COA 4, ¶ 95. When a court enters multiple convictions under such a scheme, it violates a defendant's right

26

against double jeopardy. *Woelhaf v. People*, 105 P.3d 209, 215 (Colo. 2005); *see also People v. Wood*, 2019 CO 7, ¶ 23.

¶ 75   By entering convictions under subsections (1)(b) and (1)(c) of the second degree assault statute, the district court violated Denhartog's right to be free from double jeopardy. *See People v. Anderson*, 2016 COA 47, ¶¶ 61-62 (first degree assault statute established "a single offense . . . with alternative means of commission") (*cert. granted* Nov. 21, 2016). Therefore, we remand the case to the district court to merge the two convictions. To maximize the effect of the jury's verdict, *see People v. Glover*, 893 P.2d 1311, 1314 (Colo. 1995), the trial court should vacate the conviction entered under section 18-3-203(1)(c) and retain the conviction entered under section 18-3-203(1)(b), *see People v. Delci*, 109 P.3d 1035, 1038 (Colo. App. 2004) (vacating the multiplicitous conviction that provides a less severe penalty).

## C.   Lesser Included Offense

¶ 76   Denhartog was convicted of first degree criminal trespass and second degree burglary. He contends that first degree criminal trespass is a lesser included offense of second degree burglary and therefore these convictions must merge. We disagree.

¶ 77    A defendant may not be convicted of two offenses based on the same conduct if "[o]ne offense is included in the other . . . ." § 18-1-408(1)(a), C.R.S. 2018; *see also Reyna-Abarca v. People*, 2017 CO 15, ¶ 51. But the supreme court has expressly held that first degree criminal trespass is not a lesser included offense of second degree burglary. *People v. Garcia*, 940 P.2d 357, 362 (Colo. 1997).

¶ 78    Denhartog points out that the supreme court's more recent case law, in which it clarified the standard for identifying a lesser included offense, appears to call into question *Garcia*'s continued viability. *See People v. Rock*, 2017 CO 84, ¶ 19 n.5. Still, the supreme court "alone can overrule [its] prior precedents concerning matters of state law." *People v. Novotny*, 2014 CO 18, ¶ 26. Thus, if a precedent of the supreme court "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," the court of appeals "should follow the case which directly controls," leaving to the supreme court "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

¶ 79    We therefore must reject Denhartog's claim that first degree criminal trespass is a lesser included offense of second degree burglary.

## VI.    Conclusion

¶ 80    We remand the case for the district court to (1) vacate Denhartog's conviction and sentence for first degree assault and entry of a judgment of acquittal on that count; (2) merge Denhartog's convictions for second degree assault and vacate the conviction entered under section 18-3-203(1)(c); and (3) resentence Denhartog.  We otherwise affirm the judgment.

JUDGE HAWTHORNE and JUDGE FOX concur.