22CA1994 Peo v Johnson 03-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1994
Douglas County District Court No. 20CR333
Honorable Theresa Slade, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Debra Lyn Johnson,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Lum and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 12, 2026

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Debra Lyn Johnson, appeals the district court's judgment of conviction entered on a jury verdict finding her guilty of felony driving under the influence (FDUI).  We affirm.

I.    Background

¶ 2     Early one morning, an officer spotted a car parked in a no-parking zone.  He approached the car and saw a sleeping woman (later identified as Johnson) in the driver's seat.  The officer knocked on the car's window to wake up Johnson.  She woke up and opened the door.  The officer then smelled alcohol from inside the car and on Johnson's breath.  He also noticed that Johnson was holding car keys in her hand.  And in the unoccupied passenger seat, he saw some small, half-empty bottles of alcohol inside a bag.

¶ 3     Johnson made contradictory statements about whether she had driven the car (as discussed in more detail below).  At one point, Johnson said that she hadn't been driving the car, but that her friend April had been driving when they got into a fight and April got out of the car and left.  Johnson called someone, presumed to be April, on the phone and asked her to confirm that

she, not Johnson, had been driving the car. Someone answered the phone but didn't confirm who had been driving.

¶ 4 The officer conducted a roadside sobriety test, which Johnson failed. The officer arrested Johnson and informed her that she would need to consent to a breath or blood test to determine her blood alcohol content. Johnson told the officer she had COVID-19, which meant she couldn't safely take a breath test. Johnson also refused to take the blood test. The officer informed her that the consequence for declining the blood test was that the state could revoke her license. Johnson still refused.

¶ 5 Because Johnson had allegedly been convicted of driving under the influence (DUI) or driving while ability impaired (DWAI) on more than three prior occasions, the People charged her with FDUI under section 42-4-1301(1)(a), C.R.S. 2025, charging five prior convictions as predicates.[1] The People also charged her with violating her bail bond conditions and driving after license revocation as a habitual traffic offender.

---

[1] Section 42-4-1301(1)(a), (2)(a), C.R.S. 2025, provides that DUI is a class 4 felony if it "occurred after three or more prior convictions" for certain driving-related offenses, including DUI, DUI per se, and DWAI.

¶ 6     A jury found Johnson guilty of FDUI.  She subsequently pleaded guilty to an added count of driving while under restraint in exchange for dismissal of the other two charges.[2]

## II.     Analysis

¶ 7     Johnson contends that (1) the district court erred by admitting certain evidence; (2) the prosecution didn't introduce sufficient evidence to prove FDUI; (3) prosecutorial misconduct warranting reversal occurred during voir dire and closing argument; and (4) the district court improperly gave the jury an instruction that emphasized her refusal to submit to a blood test.  We reject these contentions.

### A.     Unauthenticated Evidence

¶ 8     Johnson contends that the district court erred by admitting an unauthenticated court transcript.  We disagree.

#### 1.     Additional Facts

¶ 9     At trial, the prosecution sought to admit a court transcript from a 2020 Denver County case as evidence of four of Johnson's prior convictions.  The transcript didn't have a seal or signature of

---

[2] The jury found that the prosecution proved all five of the prior convictions beyond a reasonable doubt.

the county court clerk but had been certified by the court reporter who prepared it.  The filing officer for Johnson's case testified that the transcript was authentic.  Johnson's attorney didn't object, and the court admitted the redacted transcript into evidence as Exhibit 15(a).

### 2.    Standard of Review and Applicable Law

¶ 10    "We review evidentiary rulings, including foundation and authentication rulings, for an abuse of discretion." *People v. Bernard*, 2013 COA 79, ¶ 8 (first citing *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993); and then citing *People v. Huehn*, 53 P.3d 733, 736 (Colo. App. 2002)).  "A court abuses its discretion if it misconstrues or misapplies the law or otherwise reaches a manifestly arbitrary, unreasonable, or unfair result." *People v. Glover*, 2015 COA 16, ¶ 10.

¶ 11    Under CRE 901(a), the requirement that evidence be authenticated "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "The burden to authenticate 'is not high — only a prima facie showing is required . . . .'" *Glover*, ¶ 13 (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)); *accord Gonzales v.*

4

*People*, 2020 CO 71, ¶ 13. Authenticity may be established by, among other things, testimony from a witness with personal knowledge of the matter, CRE 901(b)(1), or by the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics [of the evidence], taken in conjunction with circumstances," CRE 901(b)(4).

¶ 12    Some records are self-authenticating, which means no extrinsic evidence is required to prove authenticity. CRE 902. A certified copy of public records may be self-authenticating if it is "certified as correct by the custodian *or other person authorized to make the certification.*" CRE 902(4) (emphasis added). Specifically as to court transcripts, "[t]he official record of trial court proceedings is the certified transcript." *People v. Harmon*, 2025 COA 38M, ¶ 82. "There is a presumption that the record as prepared by the court reporter correctly reflects the trial proceedings because the court reporter has a duty to accurately record all the testimony and rulings of the court." *People v. Rodriguez*, 794 P.2d 965, 990 (Colo. 1990) (first citing § 13-5-127, C.R.S. 2025; and then citing *Jones v. Dist. Ct.*, 780 P.2d 526, 528 (Colo. 1989)).

### 3.    Analysis

¶ 13    Johnson argues that the transcript was unauthenticated because it wasn't "certified under seal by the clerk of court or the deputy clerk of court who issued the document."  And though the transcript was certified by the court transcriber, Johnson argues that isn't the same as a clerk of the court attesting that the document is what the proponent claims it to be.

¶ 14    But certification by the clerk of the court is merely one way that a transcript can be authenticated.  Because a court transcript certified by a court reporter is the official record of the proceedings, a court reporter is authorized to make such a certification, and that certification is deemed to be prima facie evidence that the transcript is what it purports to be, we conclude that the transcript was self-authenticating under CRE 902(4).  *See Rodriguez*, 794 P.2d at 990; *Harmon*, ¶ 82; *see also People v. Martinez*, 83 P.3d 1174, 1179 (Colo. App. 2003) (prior convictions may be proved by several means, including by public records admissible under CRE 901(b)(7) or by "self-authenticating documents under CRE 902(1) and (4)").

¶ 15    And even if the transcript wasn't self-authenticating under CRE 902(4), the transcript was self-authenticating because of its

6

distinctive characteristics. *See* CRE 901(b)(4). The transcript includes a complete, accurate case caption in the ordinary form of such a caption, the identity of the company for whom the transcriber worked (including pre-printed identifications of the company on each page), a format consistent with court transcripts, and a transcriber's certification consistent with typical certifications in both form and content. As well, the content and identifying information of the transcript have distinctive characteristics consistent with the content and identifying information of the plea agreement to which it corresponds, which was certified by the Denver County Clerk and admitted into evidence. (Johnson doesn't challenge the admissibility of that exhibit on appeal.)[3]

---

[3] Even if the court erred by admitting the transcript, any error wasn't obvious given the multiple possible means of authentication discussed above, *see Hagos v. People*, 2012 CO 63, ¶ 14, and any error doesn't cast serious doubt on the reliability of the judgment of conviction, *see id.*, given the other admissible evidence, most notably the 2020 Denver County plea agreement — Exhibit 16(a) — which identified four other prior convictions. The prosecution only had to prove three prior convictions.

## B. Sufficiency of the Evidence

¶ 16    Johnson contends that the People failed to prove FDUI because they provided insufficient evidence to link her to the five prior convictions. We disagree.

### 1. Standard of Review and Applicable Law

¶ 17    "We review de novo whether the evidence was sufficient to support the conviction." *Bernard*, ¶ 15.

> In assessing the sufficiency of the evidence, we must determine whether the evidence, both direct and circumstantial, when reviewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

*Id.* at ¶ 16; *accord Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).

¶ 18    When proving FDUI, a defendant's prior convictions become elements of the offense that the prosecution must prove beyond a reasonable doubt. *People v. Herold*, 2024 COA 53, ¶ 13; *see People v. Vidauri*, 2021 CO 25, ¶ 10 ("In a criminal case, the prosecution must prove every element of the charged offense beyond a reasonable doubt."). To prove prior convictions, the prosecution

8

must "introduce documentary evidence combined with specific corroborating evidence of identification connecting the defendant to the prior conviction[s]." *Gorostieta v. People*, 2022 CO 41, ¶ 25.

¶ 19 Evidence showing only that the defendant in the current case has the same name and date of birth as the defendant in a prior case, without more, is generally insufficient to prove the defendant's identity in the prior case. *Id.* at ¶ 28.

¶ 20 For FDUI offenses, the prosecution must prove at least three prior convictions beyond a reasonable doubt. *See* § 42-4-1301(1)(a), (2)(a). Therefore, in this case, Johnson must show that the prosecution introduced insufficient evidence of at least three of the alleged prior offenses.

## 2. Analysis

¶ 21 The People alleged that Johnson had five prior DUI/DWAI convictions: one in Denver County, one in Jefferson County, two in Adams County, and one in Boulder County. In support, the People submitted seven records, all of which were admitted into evidence:

- Johnson's Colorado Division of Motor Vehicles (DMV) record;

- a sentencing document from Jefferson County showing a DUI conviction in 1991;

- a notice that documentation for two convictions in Adams County had been destroyed due to the age of the convictions;

- case documentation from Denver County regarding a DWAI conviction in 1994;

- a sentencing order from Boulder County for a DUI conviction in 2001;

- a court transcript from a 2020 plea hearing in Denver County during which Johnson admitted that she then had four particular prior DUI/DWAI convictions — and also admitted that she was then "52 years old," which is consistent with a 1968 birthdate; and

- a 2020 Denver County plea agreement, signed by Johnson, corresponding with the 2020 Denver County transcript, showing four prior DUI/DWAI convictions.

¶ 22    Also, Johnson told the officer her date of birth when he questioned her at the scene, and that date of birth matches the one

shown on all the driving records. The officer's body camera recording was admitted into evidence.

¶ 23   Johnson argues that this evidence doesn't prove beyond a reasonable doubt that she had previously been convicted because not all the documents contain sufficient information about her identity. But, as shown below, each of Johnson's prior DUI/DWAI convictions is proved by some combination of the records admitted into evidence.

¶ 24   Johnson's DMV record, which, as discussed more below, shows all five prior convictions, contains a photo of Johnson that the jury could compare to her in the courtroom and mentions other identifying features such as her date of birth, address, height, weight, hair color, and eye color. The DMV record also says, "A search of our records has revealed that this is the only subject with this name and date of birth." *See People v. Burdette*, 2024 COA 38, ¶¶ 57, 59 (finding that the DMV record supported identification of the defendant, in part because "[t]he DMV records custodian's certificate stated that a 'search of our records has revealed that this is the only subject with this name and date of birth'"). Johnson doesn't contend that the DMV record is anyone's but hers.

### a. Evidence of the Denver County Conviction

¶ 25    The 1994 Denver County conviction is supported by the following:

- The certified Denver County record shows Johnson's full name (Debra L. Johnson), date of birth (March 21, 1968), and address.

- The date of birth in the Denver County record matches the date of birth Johnson gave to the officer at the scene of the incident giving rise to the current charge and the date of birth in Johnson's DMV record.

- Johnson's DMV record shows a DWAI conviction in Denver County with a conviction date (January 28, 1994) matching that of the Denver County record.[4]

---

[4] Johnson argues that the prosecution asked the jury to engage in speculation that the dates on the DMV record correspond with the dates in the other records because the DMV record doesn't say what the dates shown therein refer to. But to assess the sufficiency of the evidence, we must "give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence." *People v. Perez*, 2016 CO 12, ¶ 25 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)). The jurors reasonably could have inferred that the dates shown in the DMV record are offense (and/or filing) and conviction dates.

- Johnson's address shown in the Denver County record matches an address in the DMV record.

    b.    Evidence of the Jefferson County Conviction

¶ 26    The Jefferson County conviction is supported by the following:

- The certified Jefferson County sentencing record for a DWAI conviction shows Johnson's full name and home address. It also bears a 1990 case number (90T19180), a notation of "LWPD," and a direction that traffic school is to be completed by "3-14-91," indicating that Johnson was sentenced before that date.

- Johnson's DMV record shows a Jefferson County DWAI conviction with the same full name shown in the Jefferson County sentencing record. The DMV record for this conviction notes "Lakewood PD," matching the notation "LWPD" in the Jefferson County sentencing record. It also shows a violation date of December 20, 1990, and a sentencing date of January 23, 1991. These dates align with the case number of the Jefferson County case and the time period of sentencing in the Jefferson County sentencing record.

    c. Evidence of the Adams County Convictions

¶ 27 The first Adams County conviction is supported by the following:

- The DMV record shows an Adams County DWAI conviction with dates of March 15, 1991, and January 8, 1993.

- Johnson expressly acknowledged in the 2020 Denver County plea agreement that she had been previously convicted twice in Adams County, both times for DWAI. The plea agreement shows a date for one of those cases of March 20, 1991, five days after one of the dates in the DMV record. *See Burdette*, ¶ 58 (noting that while the court records in that case "did not precisely match the DMV records in all respects, the major details generally synced up"; the dates in the court records "generally line[d] up" with those in the DMV record).

- The transcript of the providency hearing on the 2020 Denver County plea agreement (captioned People v. "Debra Lyn Johnson") shows that Johnson admitted to

14

twice being previously convicted in Adams County for
DWAI.

- The Adams County notice of record destruction shows
the same case number (91T4273) as shown in the 2020
Denver County plea agreement.

¶ 28    The second Adams County conviction is supported by the
following:

- The DMV record shows an Adams County DWAI
conviction with dates of November 23, 1992, and June,
1994.

- Johnson expressly acknowledged in the 2020 Denver
County plea agreement that she had previously been
convicted twice in Adams County, both times for DWAI.
The plea agreement shows a case number for one of these
convictions, 93T3340, which generally aligns with the
offense/filing date in the DMV record.

- The transcript of the providency hearing on the 2020
Denver County plea agreement (captioned People v.
"Debra Lyn Johnson") shows that Johnson admitted to
twice being convicted in Adams County for DWAI.

- The Adams County notice of record destruction shows the same case number (93T3340) as shown in the Denver County plea agreement.

  d.   Evidence of the Boulder County Conviction

¶ 29   The Boulder County conviction is supported by the following:

- The DMV record shows a conviction from a 2000 charge referencing "Louisville PD." (Louisville is in Boulder County.) It has a date of November 26, 2000.

- The certified sentencing document (with a case number of "2000CR002371") for an early-2001 (January 22, 2001) DUI conviction in Boulder County shows Johnson's full name (Debra Lyn Johnson) and date of birth ("03/21/1968"). The name and date of birth match what are shown in the DMV record.

- The 2020 Denver County plea agreement, which Johnson signed, shows the 2001 Boulder County DUI conviction with a date (January 22, 2001) and case number ("00CR02371") matching the sentencing document from Boulder County. At the providency hearing on that plea agreement, Johnson admitted that she had been

16

convicted of DUI in Boulder County on January 22, 2001. Both the plea agreement and related transcript use the same case number and date of conviction as the Boulder County sentencing document.

¶ 30 In sum, we conclude that there was sufficient evidence from which reasonable jurors could have found that Johnson committed all five predicate offenses.[5]

### C. Prosecutorial Misconduct

¶ 31 Johnson next contends that the prosecutor committed misconduct during voir dire and closing argument warranting reversal. We conclude that there was no misconduct.

### 1. Applicable Law and Standard of Review

¶ 32 We use a two-step analysis to review claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we look at whether the challenged statement "was improper based on the totality of the circumstances." *Id.* Second, if a

---

[5] Evidence of the two prior Adams County convictions is arguably weaker than that for the other prior convictions given that the records from those cases had been destroyed. But even if those two prior convictions weren't proved by sufficient evidence, the other three prior convictions clearly were. Only three prior convictions needed to be proved to convict Johnson of FDUI.

statement was improper, we determine whether it warrants reversal under the proper standard of reversal.  *Id.*

¶ 33　　To determine whether a court erred by failing to remedy alleged prosecutorial misconduct, we review for an abuse of discretion.  *See People v. Garner*, 2015 COA 175, ¶ 26, *aff'd*, 2019 CO 19.  If defense counsel timely objected to asserted misconduct, we review for harmless error.  *Crider v. People*, 186 P.3d 39, 42 (Colo. 2008); *People v. Denhartog*, 2019 COA 23, ¶ 50.  If not, we review for plain error.  *Wend*, 235 P.3d at 1097; *Denhartog*, ¶ 50.

¶ 34　　Defense counsel didn't object to any of the statements during voir dire that Johnson now challenges on appeal.  Defense counsel did object to the prosecutor's challenged statement during closing argument.

## 2.　Voir Dire

¶ 35　　Johnson argues that the prosecutor committed misconduct during voir dire by discussing the prosecution's theory of the case, indoctrinating prospective jurors, and inflaming the prospective jurors' passions and prejudices against her.  We disagree.

## a.    Applicable Law

¶ 36    The purpose of voir dire is for counsel to determine whether any prospective juror would be biased "in such a manner as to prevent [either party] from obtaining a fair and impartial trial." *Edwards v. People*, 418 P.2d 174, 177 (Colo. 1966). The purpose isn't to "educate the prospective panel of jurors to a particular theory of the case." *Id.* Thus, "[i]n the context of voir dire, a prosecutor commits misconduct when he or she misstates the law, presents factual matter he or she knows will be inadmissible, or argues the prosecution's case to the jury." *People v. Carter*, 2015 COA 24M-2, ¶ 71 (citing *People v. Krueger*, 2012 COA 80, ¶ 50). A prosecutor should also refrain from inflaming the prospective jurors' passions or prejudices. *Krueger*, ¶ 50. "[T]he context in which [the] challenged prosecutorial remarks are made is significant." *Id.* (quoting *People v. Santana*, 255 P.3d 1126, 1133 n.5 (Colo. 2011)).

## b.    Analysis

### i.    Discussing the Prosecution's Theory of the Case

¶ 37    Johnson argues that the prosecutor improperly argued the prosecution's theory of the case during voir dire by

- analogizing the concept of actual physical control (applicable to the FDUI charge and Colorado's express consent statute) to being drunk while in possession of a gun;

- analogizing pulling the trigger of a gun to "press[ing] the gas" pedal of a car, asserting that a car can be a dangerous weapon, and then asking the prospective jurors if anyone was "hearing me say this stuff" and not understanding;

- asking a prospective juror, in relation to actual physical control, "[L]et's say that there was a situation where the car wasn't on and you were still in the driver's seat but you were intoxicated. Would that be an okay situation for you?"; and

- asking if everyone had heard what a prospective juror had just said about being in the front seat rather than the back seat, and whether they disagreed.

¶ 38    These statements only indirectly implicated the prosecution's theory of the case. They were directly related to exploring the

prospective jurors' views on important principles of law that the jurors would have to apply.

¶ 39 For purposes of Colorado's FDUI and express consent statutes, a "driver" is "every person . . . who drives *or is in actual physical control of a vehicle.*" § 42-1-102(27), C.R.S. 2025 (emphasis added). This doesn't require that the "driver" actually moved the vehicle or that the vehicle traveled any particular distance. *Colo. Div. of Revenue v. Lounsbury*, 743 P.2d 23, 27 (Colo. 1987); *People v. VanMatre*, 190 P.3d 770, 772 (Colo. App. 2008).

¶ 40 The prosecutor was determining whether prospective jurors would be comfortable applying this definition. *See People v. Wilson*, 2013 COA 75, ¶ 14 ("Here, the trial court permitted . . . counsel to question the jurors about their biases and their willingness 'to accept the basic principles of criminal law.'" (citation omitted)). Indeed, the prosecutor prefaced these statements by telling the jurors they were going to have to apply a legal definition of driving that only required actual physical control. And the prosecutor's analogy (to the gun) could have helped the prospective jurors understand the definition.

¶ 41     As for asking whether any prospective juror needed clarification, the prosecutor wasn't trying his case to the prospective jurors. In fact, one prospective juror responded that she hadn't been able to hear the exchange because of a hearing impairment and needed the prosecutor to repeat it.

### ii.     Indoctrinating Prospective Jurors

¶ 42     Johnson argues that the prosecutor improperly indoctrinated prospective jurors as to the prosecution's theory of the case by

- "harp[ing] on this notion" that driving is a "big responsibility";

- responding to a prospective juror's statement that there might not have been actual physical control if someone is drunk and sitting in the car in their driveway to be alone by saying, "I think that's a great answer . . . that shows that kind of circumstantial evidence that we were discussing earlier";

- asking a prospective juror if getting in the back seat of a car after drinking was the same as "having a gun on the table while you're drunk and being way over here [versus] having it in your hand"; and

- asking whether Colorado's express consent law was "a good policy to have?" and asking, "[I]s there anyone here who thinks there could be a good reason to say no" to consenting to a chemical test?

¶ 43    The prosector discussed the responsibility of driving because a prospective juror had said that, when she thought of driving, she thought of the responsibility associated with it.  Many jurors nodded their heads in agreement.  Discussing the prospective jurors' agreement with this statement was an acceptable exchange.

¶ 44    And the prosecutor made his other statements to clarify prospective jurors' statements for himself and others.  The prosecutor said that a prospective juror gave a great answer about actual physical control because it showed how the jury can consider different factors to determine actual physical control.  And the prosecutor used a prospective juror's statement that he'd get in the back seat of the car if he'd been drinking to segue to the gun analogy because the analogy would help the prospective jurors better understand what actual physical control means in this context.

¶ 45    When the prosecutor asked prospective jurors whether the express consent law was "a good policy to have," he was re-wording a previous question in which he had asked jurors, "If you were to be pulled over and they said, hey, I'd like for you to take a blood or breath test, would you -- would that be shocking to you?" Some prospective jurors responded that it would shock them because they didn't drink and drive. The prosecutor was rephrasing his question to determine whether any prospective juror could not hold it against someone who refused a chemical test.

¶ 46    Again, these statements and questions went to whether prospective jurors would follow the law.

    iii.    Inflaming the Passions and Prejudices of the Prospective Jurors

¶ 47    At the end of the prosecutor's voir dire, he asked the prospective jurors, "Does anyone here have an experience with a DUI in your own life?" A prospective juror responded that a drunk driver had killed her cousin. The prosecutor responded, "I'm sorry to hear that. That's terrible. I think that's exactly why we have these laws to make sure that folks are held accountable for that

kind of thing." Johnson argues that the prosecutor's response only served to bias the venire and inflamed the passions of the jury.

¶ 48 Even if we assume that the prosecutor's comment was improper under the first step of our analysis, we conclude that it doesn't rise to the level of plain error. This one comment wasn't flagrantly, glaringly, or tremendously improper. *See Domingo-Gomez v. People,* 125 P.3d 1043, 1053 (Colo. 2005) ("Only prosecutorial misconduct which is 'flagrantly, glaringly, or tremendously improper' warrants reversal" under the plain error standard. (quoting *People v. Avila,* 944 P.2d 673, 676 (Colo. App. 1997))). And Johnson's counsel didn't contemporaneously object to this statement, indicating that counsel didn't consider the statement to be overly damaging. *See id.* at 1054; *People v. Knapp,* 2020 COA 107, ¶ 61.

### 3. Closing Argument

¶ 49 Johnson argues that the prosecutor committed misconduct during closing argument by misstating the facts of the case. Again, we disagree.

### a. Applicable Law

¶ 50 During closing argument, a prosecutor "may highlight facts in evidence and draw reasonable inferences." *People v. Vialpando*, 2022 CO 28, ¶ 23 (citing *Domingo-Gomez*, 125 P.3d at 1048). But "[a] prosecutor may not misstate the evidence." *Denhartog*, ¶ 66 (citing *People v. Nardine*, 2016 COA 85, ¶ 35).

### b. Analysis

¶ 51 In his closing argument, the prosecutor said that Johnson told police, "I drove one or two blocks." Johnson's counsel objected to this statement as a misstatement of fact.[6] But the officer's bodycam recording captured Johnson saying, "It was a while ago that I parked," and "That's why I did not drive. So, I just went from across over there to right here. And I've been here ever since." She then said it was "maybe only two blocks." One could reasonably infer from those statements that Johnson admitted to driving two

---

[6] The People argue that because defense counsel objected to this statement and the court then told the jurors that they "should rely on their own memory about what the evidence shows or does not show," there is no claim of error to review because "the trial court effectively sustained the objection." But telling the jurors to rely on their own memories of the evidence isn't the same as telling them to disregard a prosecutor's representation of evidence.

blocks: The fact Johnson didn't use the word "drove" or some variation thereof doesn't preclude this inference. *See People v. Meils*, 2019 COA 180, ¶ 25 (during closing, the prosecutor may argue "all reasonable inferences from the evidence in the record"). And the bodycam recording of the exchange was admitted at trial, so the jurors had the opportunity to review it for themselves and decide whether they agreed with the prosecutor's inference. *See People v. Rodriguez*, 2021 COA 38M, ¶ 12.[7]

### D. Jury Instruction on Johnson's Refusal

¶ 52 Johnson contends that the district court improperly emphasized her refusal to take a blood test in its jury instructions. We disagree.

### 1. Additional Facts

¶ 53 At trial, the prosecutor asked the court to give the jury the following instruction:

---

[7] In any event, the prosecution didn't have to prove that Johnson moved the car, only that she had physical control over it. She was found in the driver's seat of the car, which was operable, holding the keys. *See People v. VanMatre*, 190 P.3d 770, 773-74 (Colo. App. 2008) (evidence that the defendant was found in the driver's seat of an operable vehicle and tried to start it with the key when an officer approached was sufficient evidence of driving).

> If you find that the defendant refused to take and complete, and to cooperate in the taking and completing of a chemical test of her breath or blood, you may consider this refusal along with other evidence in determining whether the defendant is guilty of Driving Under the Influence or Driving While Ability Impaired.

Johnson's counsel objected, arguing that the instruction "unnecessarily highlights a piece of positive evidence for the People." Counsel didn't argue that it was an incorrect recitation of the law. The prosecutor responded that the instruction's purpose was to tell the jury what the law is and how they could consider it during its deliberations. The court gave the instruction to the jury.

### 2. Applicable Law and Standard of Review

"The trial court must accurately instruct the jury on the law relevant to every issue presented, but it must not give the jury an instruction which misstates the law or which unduly emphasizes some part of the evidence." *People v. Ellsworth*, 15 P.3d 1111, 1116 (Colo. App. 2000). "The purpose of jury instructions is to provide the jury with the applicable law and direct its attention to the specific issues to be determined." *Mier v. McCoy*, 119 P.3d 519, 524 (Colo. App. 2004). Instructions that emphasize specific evidence are disfavored because of their potential to confuse and misdirect

28

the jury. *People v. Garcia*, 2021 COA 65, ¶ 46, *aff'd*, 2023 CO 41. But a court also has "substantial discretion in formulating the jury instructions, so long as they are correct statements of the law and fairly and adequately cover the issues presented." *People v. Medina*, 260 P.3d 42, 47 (Colo. App. 2010) (quoting *People v. Gallegos*, 226 P.3d 1112, 1115 (Colo. App. 2009)).

¶ 55 "[T]he refusal to take or to complete, or to cooperate with the completing of, any test or tests shall be admissible into evidence at the trial." § 42-4-1301(6)(d). A jury may consider a defendant's refusal to submit to testing as evidence of consciousness of guilt. *People v. Montoya*, 2024 CO 20, ¶ 32 (citing *Cox v. People*, 735 P.2d 153, 158 (Colo. 1987)).

¶ 56 "We review a court's decision whether to give a particular jury instruction for an abuse of discretion." *People v. Cochran*, 2019 COA 6, ¶ 14. "A court abuses its discretion if it bases its ruling on an erroneous understanding or application of the law." *Id.*

### 3. Analysis

¶ 57      Johnson argues that, even though Colorado juries are free to consider a defendant's refusal, putting that in a jury instruction improperly emphasizes it.[8] We discern no error for two reasons.

¶ 58      First, the district court didn't *unduly* emphasize Johnson's refusal. The instruction, which accurately stated the law, said that the jury "may consider this refusal along with other evidence." This instruction didn't emphasize Johnson's refusal but merely told the jurors how they could consider it during deliberations.

¶ 59      Second, the Colorado Supreme Court and divisions of this court have held that a court doesn't err by giving a jury such an

---

[8] We observe that Johnson's counsel admitted during both opening statement and closing argument that Johnson had "been drinking" (enough to be "confused") and was "drunk." Her sole defense was that she wasn't in actual physical control of the car. The instruction she challenges on appeal related to whether she was intoxicated, not whether she was driving.

instruction. *Cox*, 735 P.2d at 159; *People v. Mersman*, 148 P.3d 199, 201 (Colo. App. 2006).[9]

### E. Cumulative Error

¶ 60 We reject Johnson's cumulative error argument. Because there was, at most, one error, the cumulative error doctrine doesn't apply. *See Howard-Walker v. People*, 2019 CO 69, ¶ 24; *People v. Jones*, 2025 COA 43, ¶ 56 (*cert. granted on other grounds* Jan. 20, 2026); *People v. Thames*, 2019 COA 124, ¶ 69.

### III. Disposition

¶ 61 We affirm the judgment.

JUDGE LUM and JUDGE MEIRINK concur.

---

[9] Johnson also argues that a division of this court has suggested that an express consent instruction shouldn't be given at all. To support this assertion, Johnson refers to Judge Welling's concurrence in *People v. Montoya*, 2022 COA 55M, *aff'd in part and rev'd in part on other grounds*, 2024 CO 20, in which he said that the instruction isn't required and is unnecessary. *Id.* at ¶¶ 55-56 (Welling, J., concurring). But Johnson fails to note that in that same concurrence, Judge Welling said, "To be sure, it's well established that it isn't improper for a trial court to instruct a jury in a DUI or DWAI case that it may consider 'refusal along with other competent evidence' in determining a defendant's guilt or innocence." *Id.* at ¶ 57 (quoting *Cox v. People*, 735 P.2d 153, 155 (Colo. 1987)).

31