# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 26, 2010

No. 08-10645 & 08-10198

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN D. MOORE,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CR-125

Before DeMOSS, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal raises two issues, the first of which pertains to our double-jeopardy jurisprudence and American-Canadian relations—whether the United States sufficiently controlled the Canadian prosecution of Defendant-Appellant Kevin D. Moore such that the Double Jeopardy Clause barred his subsequent prosecution in the United States for the same crimes. The other issue is whether our post-*Booker* sentencing decisions—affording more deference to Guideline sentences than to non-Guideline sentences—amount to a de facto mandatory-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

08-10645 & 08-10198

sentencing regime in violation of the Sixth Amendment. The answer to both is no. Therefore, we AFFIRM.

The relevant facts are undisputed. On September 19, 2005, Canadian authorities arrested Moore for attempting to enter Canada with child pornography on his laptop. Moore pleaded guilty to Canadian charges of possession and smuggling child pornography, for which he served a 133-day sentence of imprisonment in Canadian custody. Upon his return to the United States, federal authorities arrested and indicted him on the same charges. Moore moved to dismiss the indictment on double-jeopardy grounds. He argued that double jeopardy should apply because United States and Canadian authorities cooperated in his prosecution by communicating and sharing reports and evidence. The evidence included his laptop, which contained child pornography. The district court denied the motion. At his trial, Moore's Canadian guilty plea was not introduced before the jury. The jury convicted Moore on both counts, and the court sentenced him to 360 months of imprisonment followed by lifetime supervised release. Moore timely filed a notice of appeal from the conviction and sentence. He previously filed an interlocutory appeal from the denial of his motion to dismiss on double-jeopardy grounds. We have consolidated the two appeals.

We first address the properly preserved double-jeopardy claim, which we review de novo. *See United States v. Villanueva*, 408 F.3d 193, 200 (5th Cir. 2005). Moore recognizes that, under the dual-sovereignty doctrine, double jeopardy does not attach when separate sovereigns prosecute offenses with identical elements. *Cf. Heath v. Alabama*, 474 U.S. 82, 88 (1985). As a sovereign nation, Canada qualifies as a sovereign for purposes of the doctrine. *See Villanueva*, 408 F.3d at 201. Nonetheless, Moore urges the court to find that double jeopardy applies because the Canadian prosecution was merely a sham, or put differently, a mere tool controlled by the United States.

As an initial matter, it is unclear whether such an exception to the dual-sovereignty doctrine exists in this circuit. This exception originated from *Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959), where the Supreme Court suggested in dicta that there may be an exception to the dual-sovereignty doctrine when one sovereign is "merely a tool" of the other in bringing a second prosecution that is a "sham and a cover" for a prosecution that would otherwise be barred under the Double Jeopardy Clause. We have not formally recognized or applied the exception; when confronted with the issue, we have held that, even if the exception exists, the facts do not merit its application. *See United States v. Angleton*, 314 F.3d 767, 773-74 (5th Cir. 2002) (citing *United States v. Patterson*, 809 F.2d 244, 247 n.2 (5th Cir. 1987)).[1] This case does not warrant a different approach.

We have emphasized that the essential element of the *Bartkus* "tool" test is a high level of control: one sovereign must (1) have the ability to control the prosecution of the other and (2) it must exert this control to "essentially manipulate[] another sovereign into prosecuting." *See United States v. Angleton*, 314 F.3d 767, 774 (5th Cir. 2002) (citations and internal quotation marks omitted); *see also Villanueva*, 408 F.3d at 201 ("Although United States officials assisted the Mexican government, defendants-appellants presented no evidence that the United States had any ability to control the prosecution, so they have failed to prove that the Mexican prosecution was a sham."). Consistent with this approach, a recent decision of the First Circuit emphasized that the "*Bartkus* exception is 'narrow[ly] . . . limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another

---

[1] *Angleton* further observed, "Indeed, the close interaction between federal and state authorities in *Bartkus*, which included the federal prosecutor's decision to 'instigate and guide' the successive state prosecution, suggests that the sham exception exists, if at all, only in the rarest of circumstances." 314 F.3d at 774 (citation omitted).

3

that the latter retains little or no volition in its own proceedings.'" *United States v. Dowdell*, —F.3d—, 2010 WL 481416, at *11 (1st Cir. Feb. 12, 2010) (citation omitted) (alterations in original). Accordingly, to prevail, Moore must establish a prima facie case that Canada was a mere tool of the United States. *Villanueva*, 408 F.3d at 201 (citation omitted). He has not come close to satisfying this standard.

Moore has set forth no evidence, and indeed, has not even alleged that the United States "essentially manipulated" Canada into prosecuting him. Nor has he shown or even alleged that the United States so thoroughly dominated or manipulated the Canadian prosecutorial machinery that the Canadian authorities retained little or no volition in their prosecution. Instead, he alleges the following facts to establish collusion: (1) agents of the United States Immigration and Customs Enforcement (ICE) at the Ottawa Attache's office opened a file on Moore on September 20, 2005, the day after the Canadian authorities arrested him; (2) information regarding Moore's arrest was sent to the ICE office in Dallas on September 20, 2005; (3) at ICE's request, the Canadian authorities kept ICE informed about the prosecution and forwarded the seized evidence; and (4) the Canadian authorities gave ICE the seized laptop, which contained the child pornography, despite an alleged assurance to Moore that they would delete all of the data on the laptop after he pleaded guilty to the Canadian charges.

At most, this establishes close cooperation between the Canadian and United States authorities. In fact, in his brief to this court, Moore alleges nothing more than a "high level of cooperation between the Canadian authorities and United States law enforcement agencies, which when aggregated, amounts to collusion sufficient to justify finding a sham prosecution." However, a high level of cooperation between two sovereigns does not satisfy the "mere[] tool" test. *Bartkus*, 359 U.S. at 122-24 (finding no exception where the federal

4

prosecutor instigated and guided the successive state prosecution); *United States v. Rashed*, 234 F.3d 1280, 1284 (D.C. Cir. 2000) ("*Bartkus* acknowledges that *extensive law enforcement and prosecutorial cooperation* between two sovereigns does not make a trial by either a sham." (emphasis added)); *United States v. Tirrell*, 120 F.3d 670, 677 (7th Cir. 1997) ("Even *significant cooperation* between federal and state agencies is not enough to make the second prosecution a sham." (citations and internal quotation marks omitted) (emphasis added)); *United States v. Figueroa-Soto*, 938 F.2d 1015, 1020 (9th Cir. 1991) ("As *Bartkus* makes plain, there may be *very close coordination* in the prosecutions, in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing of the court proceedings so that the maximum assistance is mutually rendered by the sovereigns." (emphasis added)). In sum, even if the *Bartkus* exception exists in this circuit, Moore has not established that it applies here because neither his allegations nor the evidence suggest that Canada was a "mere[] tool" of the United States. *Bartkus*, 359 U.S. at 123.

Finally, Moore argues that our post-*Booker* holdings, which apply a more deferential standard of review to a Guideline sentence than to a non-Guideline sentence, have created a de facto mandatory-sentencing regime in violation of the Sixth Amendment. We review this properly preserved claim de novo. *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000). This argument is foreclosed for at least two reasons. First, Moore complains about decisions that are binding on this court, *see, e.g., United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006), and one panel of this circuit cannot overrule the decision of a prior panel, *FDIC v. Dawson*, 4 F.3d 1303, 1307 (5th Cir. 1993). Second, *Rita v. United States*, 551 U.S. 338, 347, 353 (2007), forecloses Moore's argument that the presumption of reasonableness for Guideline sentences violates the Sixth Amendment.

AFFIRMED.