23CA0473 Peo v Colter 06-12-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0473
Jefferson County District Court No. 15CR1722
Honorable Lilly W. Oeffler, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew Tod Colter,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica A. Pitts, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Matthew Tod Colter, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child (SAOC).  We affirm.

## I.    Background

¶ 2    A jury found Colter guilty of SAOC for assaulting the three-year-old daughter of his neighbor, B.C.  The evidence presented by the prosecution showed that Colter, while intoxicated, knocked on B.C.'s apartment door.  Colter and B.C. were friends, and he had visited her apartment multiple times in the past.  B.C. therefore invited him in.  At some point during the evening, B.C.'s child was sitting on Colter's lap.  B.C. noticed Colter touching her child's abdomen both over and under her shirt, but she gave him the benefit of the doubt and didn't interfere.  When B.C. briefly stepped away to tend to her dogs, she heard a snapping sound similar to elastic breaking.  Turning around, she saw Colter's hand moving in her child's pants while he exhibited a "pleasurable" look on his face.  She yelled at him and immediately kicked him out of her apartment.  Afterward, she told a neighbor in the hallway what had happened.

¶ 3    Following the incident, Colter returned to his own apartment. A short time later, a detective responded to a reported burglary at Colter's apartment. The detective found that Colter had suffered head injuries and was intoxicated.

¶ 4    When asked what had happened, Colter responded, "I don't know." The detective eventually spoke to B.C., who reported that Colter had "molested" her child. The detective also determined that other individuals in the apartment complex had apparently confronted Colter about his assault and "take[n] matters into their own hands."

¶ 5    Colter was charged with SAOC and a jury found him guilty.

¶ 6    Colter appeals, contending that the district court erred by (1) instructing the jury on self-induced intoxication; (2) admitting improper expert testimony from the detective; and (3) allowing prosecutorial misconduct during testimony and closing arguments.

II.    Self-Induced Intoxication Instruction

¶ 7    Colter first contends that the district court erred by instructing the jury on self-induced intoxication because (1) Colter didn't present an intoxication defense; (2) the instruction was

2

overbroad; and (3) the instruction could have unduly emphasized the evidence of his intoxication. We aren't persuaded.

### A. Standard of Review and Applicable Law

¶ 8 A person commits SAOC when that person knowingly subjects another who isn't their spouse to any sexual contact if the victim is less than fifteen years of age and the person is at least four years older than the victim. § 18-3-405(1), C.R.S. 2024. When the General Assembly specifies the mental culpability requirement for an offense as "knowingly," as it has with SAOC, the offense is considered a general intent crime. § 18-1-501(6), C.R.S. 2024. Self-induced intoxication isn't a defense against a general intent crime. *People v. Vigil*, 127 P.3d 916, 930-31 (Colo. 2006).

¶ 9 We review de novo whether the trial court correctly instructed the jury on matters of law. *People v. Cuevas*, 2024 COA 84, ¶ 36. If the instructions correctly state the law, we review the court's decision to give a particular instruction for an abuse of discretion. *Id.* A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law. *People v. Harmon*, 2025 COA 38, ¶ 96.

¶ 10    The parties agree that this contention is unpreserved, thus limiting our review to plain error.  Plain error is an error that is both obvious and substantial, which means the error must "so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Hoggard v. People*, 2020 CO 54, ¶ 13 (quoting *People v. Weinreich*, 119 P.3d 1073, 1078 (Colo. 2005)).

### B.    Additional Background

¶ 11    B.C. testified that Colter was clearly intoxicated when he arrived at her apartment.  The detective similarly testified that Colter showed visible signs of intoxication during his interview.

¶ 12    At the close of evidence, the court instructed the jurors on self-induced intoxication, informing them that they couldn't consider Colter's self-induced intoxication for the purpose of deciding whether the prosecution had proved the elements of SAOC.

### C.    Analysis

¶ 13    For three reasons, we perceive no abuse of discretion in the district court's decision to instruct the jury on self-induced intoxication.

¶ 14　　First, provided the evidence raises the issue of the defendant's self-induced intoxication, the trial court may properly instruct the jury on self-induced intoxication even when the defendant strategically chooses not to pursue intoxication as a defense. *See People v. Quintana*, 996 P.2d 146, 148 (Colo. App. 1998) (rejecting the defendant's argument that the trial court's voluntary intoxication instruction "interfered with his tactical decision not to pursue intoxication as a defense," in part, because "some evidence" showed he was intoxicated at the time of the offense). Because Colter doesn't dispute that at least some evidence showed that he was intoxicated, the court didn't abuse its discretion by instructing the jury on the law that governs self-induced intoxication.

¶ 15　　Second, although Colter argues that the court's instruction was overbroad because it prevented the jury from considering his intoxication for purposes unrelated to his mens rea (such as explaining his memory loss), he never asked for a limiting instruction or other clarifying language along these lines. *See People v. Thomas*, 2014 COA 64, ¶ 58 ("Absent a special statutory requirement, a trial court is under no obligation to provide a limiting instruction without a defendant's request that it do so.").

¶ 16    Third, we disagree with Colter that the court's instruction unduly emphasized the evidence of his intoxication. To the contrary, the court's instruction on self-induced intoxication was just one of twenty-one jury instructions that the court gave, the instruction didn't comment on the evidence adduced at trial, and the language properly informed the jury what it could do with such evidence. *See People v. Garcia*, 2021 COA 65, ¶ 48, *aff'd*, 2023 CO 41; *see also People v. Bryant*, 2018 COA 53, ¶ 83 (trial court must "correctly instruct the jury on the governing law").

¶ 17    Accordingly, we perceive no error, plain or otherwise, in the court's decision to instruct the jury on self-induced intoxication.

## III.    Improper Expert Testimony

¶ 18    Colter next contends that the district court abused its discretion by admitting the detective's expert testimony under the guise of lay testimony when the detective explained the reasons a person might not respond when questioned by police. Colter also argues that the detective's testimony improperly attacked his credibility. We perceive no abuse of discretion.

A.    Standard of Review and Applicable Law

¶ 19    "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  CRE 702.  "[T]he critical factor in distinguishing between lay and expert testimony is the basis for the witness's opinion."  *Venalonzo v. People*, 2017 CO 9, ¶ 22.  "If the witness provides testimony that could be expected to be based on an ordinary person's experiences or knowledge, then the witness is offering lay testimony."  *Id.* at ¶ 23.  But if the witness provides testimony that couldn't be offered "without specialized experiences, knowledge, or training, then the witness is offering expert testimony."  *Id.*

¶ 20    Because the distinction between lay and expert opinion testimony "can be a difficult one" and requires the trial court to engage in fact-specific analyses, we review the court's decision for an abuse of discretion.  *Id.* at ¶ 24.

¶ 21    The parties agree that defense counsel didn't object to the detective's testimony on this basis at trial, so we apply the plain error standard of reversal. *See Hoggard,* ¶ 13.

### B.    Additional Background

¶ 22    The detective testified that Colter didn't answer any questions about the events on the night in question. When asked by defense counsel during cross-examination about why someone may not remember what happened, the detective responded that there are "myriad" reasons why people don't want to talk to the police, such as protecting someone or preventing retaliation. On redirect, the prosecutor asked the detective based on his "experience" in his "line of work" whether "people" in some situations won't talk because "they've done something wrong." The detective answered, "Absolutely."

### C.    Analysis

¶ 23    We disagree with Colter's contentions that (1) the detective gave improper expert opinion testimony under the guise of lay opinion testimony and (2) the detective's testimony improperly attacked Colter's credibility.

¶ 24    A detective testifying as a lay witness doesn't provide improper expert testimony simply by acknowledging that a person may decline to talk to the police "because they've done something wrong." The detective could reasonably be expected to know this based on everyday life experiences, not solely on specialized law enforcement training. *See People v. Acosta*, 2014 COA 82, ¶ 60 (explaining that jurors have "common experiences in everyday life that would inform their understanding of the term ['guilty-looking'], such as the look of children when caught violating some parental rule or a person of any age who has just been caught doing something wrong, such as lying"). Moreover, the prosecutor's passing references to the detective's experience and training during questioning didn't transform the detective's lay testimony into expert testimony. *See People v. Murphy*, 2021 CO 22, ¶¶ 32-33; *see also Venalonzo*, ¶ 28 (interviewer's testimony recognizing certain behaviors in children based on her "years of experience" wasn't expert testimony because an ordinary person could reasonably be expected to recognize the behaviors).

¶ 25    Colter nonetheless argues that the detective's remarks on redirect improperly touched on his credibility. *See, e.g., Liggett v.*

*People*, 135 P.3d 725, 732 (Colo. 2006) ("Credibility determinations are to be made by the fact-finder, not by the prosecutor or a testifying witness."). But the prosecutor framed her questions to the detective in general terms, asking about the reasons "someone" would prefer to not talk to the police and whether "people" decline to talk to the police when they have done something wrong. These questions weren't specific to Colter.

¶ 26    Even if the jury might have interpreted the detective's testimony on redirect as referring specifically to Colter, we conclude that defense counsel opened the door to this line of questioning during cross-examination. *See Golob v. People*, 180 P.3d 1006, 1012 (Colo. 2008) ("The concept of 'opening the door' represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression.").

¶ 27    During cross-examination, defense counsel asked the detective about possible reasons why a person might be unable or unwilling to talk to the police. Through leading questions, defense counsel gave two specific examples: (1) lack of memory due to brain trauma

and (2) trying to protect a witness from retaliation. The detective agreed those are possible reasons but also explained that "myriad" other reasons may also exist. Defense counsel didn't allow the detective to elaborate. Given this line of questioning, the door was opened for the prosecutor to follow up on redirect by asking the detective about other reasons a person may be unable or unwilling to talk to the police. *See Venalonzo*, ¶ 44.

¶ 28 Accordingly, the court didn't err, plainly or otherwise, by admitting the detective's testimony on redirect.

## IV. Prosecutorial Misconduct

¶ 29 Colter next contends that the district court erred by allowing the prosecutor to make comments during testimony and closing arguments that were calculated to appeal to the jury's sympathy. Specifically, he contends that the prosecutor committed misconduct by (1) referring to the child's "little pink sweatpants" and (2) saying that Colter "shattered" and "broke" B.C.'s trust. We disagree.

### A. Additional Background

¶ 30 B.C. testified that her child was wearing "pink sweatpants and a little sweatshirt" during the assault. In addition, the child's

sweatpants — which were indeed pink and little — were admitted into evidence.

¶ 31 B.C. also testified regarding the nature of her relationship with Colter before the assault, describing it as "friendly and trusting." B.C. said Colter "broke" that trust and she expressed distress at the thought that people she trusted could harm her child.

¶ 32 Colter says that the prosecutor twice referred to the child's "little pink sweatpants" or "little sweatpants," once while questioning a DNA analyst and once during closing argument. The prosecutor also referred to B.C.'s "broken" or "shattered" trust at four different points, once while questioning B.C. on redirect and three times during closing arguments. Defense counsel objected based on relevance during B.C.'s questioning but otherwise didn't object to the prosecutor's comments.

B. Standard of Review and Applicable Law

¶ 33 "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005). We won't disturb the court's rulings regarding such statements absent an

abuse of that discretion. *People v. Strock*, 252 P.3d 1148, 1152 (Colo. App. 2010).

¶ 34    When reviewing claims of prosecutorial misconduct, we conduct a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Id.* Second, if the comments were improper, we evaluate whether they warrant reversal under the proper standard of reversal. *See id.*

¶ 35    Some of Colter's contentions of prosecutorial misconduct involve the prosecutor's closing argument. When evaluating a prosecutorial misconduct claim related to closing argument, we look to the context of the argument as a whole and in light of the evidence before the jury. *People v. Samson*, 2012 COA 167, ¶ 30. A prosecutor is permitted to comment on the admitted evidence and the reasonable inferences that can be drawn from the evidence, employ rhetorical devices, and engage in oratorical embellishment and metaphorical nuance. *Id.* at ¶ 31. No "bright line" rule separates permissible oratorical embellishment from impermissible oratorical excess. *Harris v. People*, 888 P.2d 259, 265 (Colo. 1995). But "'arguments and rhetorical flourishes must stay within the

13

ethical boundaries' that our supreme court has drawn." *People v. Herold*, 2024 COA 53, ¶ 68 (quoting *Domingo-Gomez*, 125 P.3d at 1048).

¶ 36　　Because arguments delivered in the heat of trial aren't always perfectly scripted, we give the prosecutor the benefit of the doubt when their remarks are ambiguous or simply inartful. *Samson,* ¶ 30. However, a prosecutor can't use closing arguments to mislead or unduly influence the jury. *Domingo-Gomez*, 125 P.3d at 1049. A prosecutor may not, for example, intentionally misstate the evidence or attempt to inflame the jurors' passions. *See id.*

¶ 37　　With one exception, the parties agree that defense counsel didn't preserve Colter's challenges to the prosecutor's comments, limiting our review to plain error. "Only prosecutorial misconduct that is 'flagrantly, glaringly, or tremendously improper' warrants reversal under the plain error test." *People v. Duncan*, 2023 COA 122, ¶ 33 (quoting *Hagos v. People*, 2012 CO 63, ¶ 14).

¶ 38　　The parties disagree, however, over whether defense counsel's relevance objection during B.C.'s testimony preserved Colter's argument that the prosecutor committed misconduct when asking about B.C.'s "broken" trust. We need not resolve this question,

14

however, because we perceive no basis to reverse under either the plain error standard of reversal or the nonconstitutional harmless error standard. *See Hagos*, ¶¶ 12, 14.

### C. Analysis

¶ 39 Turning first to the prosecutor's "little pink sweatpants" comments, we discern no prosecutorial misconduct when the remarks are considered in context. B.C. had previously described her child's sweatpants as pink and her clothes as little. The sweatpants themselves were also admitted into evidence. The prosecutor's description was therefore accurate and didn't misstate the evidence. *See Domingo-Gomez*, 125 P.3d at 1049. Moreover, the prosecutor was permitted to comment on the admitted evidence, including B.C.'s description, if for no other reason than to help jog the jury's memory regarding B.C.'s earlier testimony. *See Samson*, ¶ 31.

¶ 40 True, some might have viewed the prosecutor's comments as portraying the child as vulnerable or sympathetic. But we give prosecutors the benefit of the doubt when their comments are ambiguous. *Id.* at ¶ 30. And importantly, the prosecutor didn't pair her references to the little pink sweatpants with a request that

15

the jury "do justice" for a vulnerable or sympathetic victim. *People v. McBride*, 228 P.3d 216, 223 (Colo. App. 2009).

¶ 41 We also disagree with Colter that the prosecutor's references to B.C.'s "shattered" and "broken" trust were somehow improper. Once again, the prosecutor's comments accurately described the admitted evidence — B.C. testified that Colter had "broken" her trust. The prosecutor was permitted to summarize B.C.'s testimony through rhetorical devices and oratorical embellishment. *Samson,* ¶ 31. The prosecutor's use of "shattered" trust did just that.

¶ 42 Colter nevertheless argues that he wasn't charged with SAOC by one in a position of trust, § 18-3-405.3, C.R.S. 2024, rendering his trusting relationship with B.C. "immaterial." But the prosecutor was permitted to discuss the admitted evidence to help contextualize the relationship between B.C., her child, and Colter. B.C. testified, for example, that she briefly left Colter alone with her child despite observing Colter touching her child's abdomen both over and under her shirt. Without the context of their trusting relationship, a juror may have reasonably questioned why B.C. didn't immediately remove her child from Colter's lap. Their trusting relationship also helped explain why B.C. allowed Colter

16

into her apartment when he was visibly intoxicated. *See Domingo-Gomez*, 125 P.3d at 1048 ("[C]losing argument allows advocates to point to different pieces of evidence and explain their significance within the case.").

¶ 43    Accordingly, the district court didn't abuse its discretion by not correcting the prosecutor's challenged comments.

## V.    Disposition

¶ 44    We affirm the judgment.

JUDGE TOW and JUDGE YUN concur.